JEFFREY D. LEISER,

                              Plaintiff,

        v.                                                              Case No. 23-cv-395-pp

SGT. JOHN BRETZEL, LT. BUTCH DODD,
CAPT. TERRY SAWALL, ERIC BARBER,
JOLI GRENIER and CHAD R. KELLER,

                              Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Jeffrey D. Leiser, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that defendants violated his constitutional rights. The plaintiff has paid the full filing fee. This decision screens his amended complaint. Dkt. No. 7.

## I.      Screening the Complaint

### A.      Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued Sergeant John R. Bretzel, Lieutenant Butch Dodd, Captain Terry Sawall, Deputy Warden Eric Barber, Hearing Committee Member and Unit Manager Joli Grenier and Administrative Captain Chad R. Keller. Dkt. No. 7 at 1. The defendants work at Redgranite Correctional Institution, where the plaintiff is incarcerated, and he sues them in their individual capacities. Id. at ¶¶4-10.

The plaintiff alleges that on November 23, 2022, defendant Bretzel wrote him a false conduct report (Conduct Report Number 293774) for violations of DOC 303.18 (Threats) and DOC 303.29 (Disrespect). Id. at ¶¶14-15. The conduct report states:

> On 11-23-22 at approximately 1:55pm I, SGT Bretzel was walking to my assigned post as RHU SGT. While walking past the H-Unit court yard I heard Inmate Leiser, Jeffery 330229 shouting to inmates on the H-Unit court yard, (through the fence) while he was leaving from Core North. Inmate Leiser yelled in a clear loud tone to another inmate "Your fucking girl Nash has something coming to her!" "That bitch thinks . . ." At this point I stopped Inmate Leiser and informed him the inappropriate and disrespectful comments will not be tolerated and he would be receiving conduct report. I also informed him not to shout to H-unit through the fence and return to his housing unit. Let it be known that approximately 20 inmates were in the H-unit at this time. Shift supervisor was later notified.

Id. at ¶14; Dkt. No. 7-1 at 1. Defendant Sawall allegedly approved the conduct report and sent the plaintiff to segregation after the incident. Dkt. No. 7 at ¶15. The plaintiff states that the conduct report inaccurately says that Sawall served the conduct report on the plaintiff, but that it was defendant Dodd who delivered the conduct report to him. Id. at ¶¶15-18.

3

The plaintiff alleges that on November 25, 2022, he received a Notice of Major Disciplinary Hearing Rights and Waiver of Contested Major Hearing and Waiver of Time Form (DOC-71). Id. at ¶16. The form allegedly stated that the plaintiff's staff representative for the hearing was Officer Nicole Burmeister, and the plaintiff says he agreed to this. Id.

The plaintiff alleges that in addition to delivering the conduct report to him, Dodd "had substantial involvement in the conduct report by offering [the plaintiff] 15 day's disciplinary segregation[.]" Id. at ¶19. The plaintiff states that Dodd also served as the disciplinary hearing officer, which violated Wis. Admin. Code §DOC 303.79(3) ("No person who has substantial involvement in the incident which is the subject of a hearing may serve as a hearing officer or committee member for that hearing."). Id.

On November 28, 2022, the plaintiff was allegedly interviewed by "Staff useless advocate Opperman" who told the plaintiff that he would be the plaintiff's staff representative instead of Nicole Burmeister. Id. at ¶20. The plaintiff states that he told Opperman that he did not want him as staff representative "as he does not do his Job nor would he help [the plaintiff] obtain the video evidence that shows/proves Sgt. Bretzel's conduct report was false as he never did anything alleged in his conduct report." Id. The plaintiff alleges that he received a new DOC 71 form "where Defendant Dodd switched Burmeister's name for Opperman and kept my signature even though I did not agree to Opperman." Id. at ¶22. The plaintiff says that "[i]t should be noted that non-defendant Kirsch is the security office P.A. secretary came to [the

4

plaintiff's] cell in RH D-09 and told [the plaintiff] that the surveillance tape (video recording) would be reviewed prior to the due process hearing and be present at it, by Dodd and Staff Representative Opperman." Id. at ¶21.

The plaintiff alleges that on November 28, 2022, he gave Opperman his Inmate's Request for Attendance of Witness/Evidence (DOC Form-73) in which he requested Loren L. Leiser (the plaintiff's brother) and Joshua Goldsmith as witnesses for his disciplinary hearing. Id. at ¶23. The plaintiff also allegedly asked for the surveillance tape (video recording) "of the H Unit Court yard facing Core North, and the main street video showing MOS Street[]" to "show/prove Sgt. Bretzel never stopped [the plaintiff] or talked to [him] at all!" Id. at ¶24. The plaintiff states that the video would also show that he "made 'No Threat' to any[one] or about anyone as [he] kept walking to [his] unit and [was] not stop[ped] or talked to by Sgt. Bretzel, making this a false conduct report." Id. The plaintiff alleges that he gave Opperman two pages of questions to be asked of the witnesses during the due process hearing. Id. at ¶25. The plaintiff states that he was allowed his witnesses, but that Sawall denied the video evidence. Id. at ¶26.

The plaintiff alleges that at his due process hearing on December 1, 2022, his witness Loren Leiser "testified that Bretzel never stopped [the plaintiff] or talked to him," and his witness Joshua Goldsmith testified "that at no time did Sgt. Bretzel stop and talk to [the plaintiff]." Id. at ¶27. The plaintiff states that at his hearing Dodd told him that Sawall denied the surveillance tape evidence under "DOC 303.87(2)(b)1" as unreliable. Id. Dodd allegedly

"found [the plaintiff] guilty in violation of [his] 14th Amendment right to present admissible evidence of [his] innocence." Id. The plaintiff asserts that he was given fifteen days disciplinary segregation "for something that never happened." Id. at ¶28. The plaintiff states that "Bretzel never stopped [him] nor talked to him as he claims in his conduct report[]" and he reiterates that his two witnesses testified in front of Dodd and Grenier. Id. The plaintiff alleges that Grenier was a hearing committee member at his disciplinary hearing but that she was not paying attention during the hearing. Id. at ¶29. The plaintiff alleges that he had submitted questions for the witnesses to Opperman but that Dodd changed the plaintiff's questions or wrote "NR (Not Relevant or Not Read?)" and Grenier allowed it. Id. at ¶30. The plaintiff allegedly submitted three questions for defendant Bretzel at the hearing, but Dodd asked Bretzel only one of them. Id.; Dkt. No. 7-2 at 7, 8. The plaintiff states that the "fact that Dodd and Grenier did not add [the plaintiff's] questions from Sgt. Bretzel shows their deliberate indifference denial of due process." Dkt. No. 7 at ¶33.

The Major Disciplinary Hearing, Reasons for Decision and Evidence Relied On form (DOC-84) states that the committee found the plaintiff guilty of violating Wis. Admin. Code §§DOC 303.29 (Disrespect) and 303.18 (Threats). Id. at ¶34. The form includes a "Reason for Decision" section that states in relevant part:

> Hearing committee believes it is more likely than not that this inmate committed this act. Hearing committee evaluated all the evidence and reached its conclusion that the statements in the conduct report are correct. Hearing committee finds the conduct report to be credible, since the staff member writing the report has no reason to fabricate the information set forth. Hearing committee

Case 2:23-cv-00395-PP   Filed 03/12/24   Page 6 of 18   Document 9

finds inmate's statement to be less credible, and an attempt to avoid disciplinary action. Hearing committee has considered both the conduct report and the evidence presented at the hearing to include the Staff Representative Report. We have not relied only on the conduct report. Hearing committee notes that a Staff Representative was assigned and there is no known conflict of interest. The assigned Staff Representative Mr. Opperman attended this hearing and had no further comment. Based on our conclusions about the testimony and reasonable inference drawn from these factors, which are set forth above, we conclude the following:

Inmate found guilty of DOC 303.18 Threats. An inmate who communicates intent to do any of the following to a person is guilty of threats:
(1) Physically harm, harass or intimidate that person or another.

Inmate admits to talking to another inmate on the H unit courtyard from the main walkway. Inmate admits to talking, while inmate witness testimony states they did the talking during the incident. Inmate admits that the report writer did walk past him and another inmate at the time of the offense.

Inmate found guilty of DOC 303.29 Disrespect. Any inmate who shows disrespect to any person is guilty of disrespect, whether or not the subject of the disrespect is present and even if the expression of disrespect is in writing. Disrespect includes derogatory or profane writing, remarks or gestures, name calling, yelling, and other acts which are made outside the formal complaint process, which are expressions of disrespect, and which have a reasonable potential to negatively affect institution security, safety, order, or inmate discipline.

Inmate made a comment regarding a staff member. Inmate states he spoke with his brother through the fence on H Unit courtyard. Report writer reports hearing the comment while walking past. Inmate admits to the staff member being present during the incident.

Dkt. No. 7 at ¶34; Dkt. No. 7-2 at 10.

The plaintiff alleges that the committee (Dodd) contradicted itself on what the committee relied on and that its statement that it found the conduct report to be reliable shows that Dodd lied in the decision. Dkt. No. 7 at ¶36. The

7

plaintiff states that if the video evidence had been presented at the hearing, the conduct report would have been dismissed because it "clearly shows the staff writing the conduct report (Sgt Bretzel) fabricated the ent[ire] incident." Id. The plaintiff alleges that the "[h]earing committee finds inmate[']s statement to be less credible, and an attempt to avoid disciplinary action is another due process violation of hiding/refusing/denying admissible evidence of [the plaintiff's] innocence." Id. at ¶37.

The plaintiff alleges that on December 1, 2022, he filed an appeal of the hearing decision and that on January 9, 2023, defendant Barber affirmed the decision. Id. at ¶38. He states that on December 22, 2022, he submitted a request to amend his conduct report appeal, but Warden Cromwell (not a defendant) denied the request. Id. at ¶39.

The plaintiff describes that he received a new hearing on his conduct report, apparently after he filed an "Inmate Complaint." Id. at ¶41. He states:

> The Inmate Complaint was granted by the Office of Security and a new hearing was held on 5/10/23 at 10:00 a.m. [The plaintiff] was not given 24 hour notice of the hearing. Mr. Opperman, Staff Representative came to me while I was in the Law Library on 5/10/23 at 9:50p.m. [sic] and told me the hearing would be in 10 minutes. I was not allowed to obtain my legal file on this case prior to the hearing. Once at the hearing it was I, Admin Cap[tain] Keller, and defendant Grenier, Mr. Opperman I was not allowed to call any witnesses [sic]. Admin. Capt. Keller stated he would review their testimony of the hearing.

Id. at ¶41.

The plaintiff alleges that before the rehearing, "Cindy O'Donnell (CCE)"— presumably "corrections complaint examiner"—emailed then-Warden Christopher Stevens and requested that the plaintiff receive a new hearing and

8

that the video be reviewed if available. Id. at ¶42. The plaintiff has included

Cindy O'Donnell's email to Warden Stevens, which states in relevant part:

> Another one that predates your arrival but I now have the appeal.
>
> A PIOC [person in our care]) was issued a conduct report for allegedly yelling through a fence to his brother in the courtyard while he was walking back to his unit. He states that the Sergeant who wrote the conduct report never stopped him and never told him not to yell (both of which the Sergeant documented in the conduct report). The PIOC then requested the video surveillance footage from the courtyard be present at his conduct report hearing and viewed by the hearing officer and advocate. The request was denied by the Security Director under 303.87.2.(b)1.
>
> DOC 303.87 Evidence.
> (1) Evidence is relevant if the evidence makes it appear more likely or less likely that the inmate committed the offense of which the inmate is accused.
> (2)
> DOC 303.87(2)(a)(a) A hearing officer may consider any relevant evidence, whether or not it would be admissible in a court of law and whether or not any violation of any state law or any DOC administrative code provision occurred in the process of gathering the evidence.
> (b) A hearing officer may refuse to hear or admit relevant evidence for any of the following reasons:
> 1. Unreliable.
>
> When asked to expound on this, the security director responded,
> "Video requested has no audio
> Video clarity/view does not show staff/PIOC verbal altercations/mouth movements"
>
> The CCE asked the Security Chief to weigh in and he disagreed with the reason given for denial but instead noted, "video would not be allowed to be viewed at the hearing regardless due to security reasons."
>
> But the video didn't have to be viewed by the accused. It could have been viewed by the hearing officer and advocate. It seems simple to me. It would either show the Sergeant did stop the PIOC and spoke with him as detailed in the conduct report or he didn't or it was inconclusive. I think it should have been available to the hearing officer.

9

...

> I do not know if the video is still available. If it is, I would recommend affirming the appeal to have a re-hearing where the video is reviewed by the hearing officer and advocate (but not the accused PIOC if there are security concerns). If the video isn't available, should the conduct report be dismissed? I don't know and would appreciate your review and thoughts.

Dkt. No. 7-2 at 15-16.

The plaintiff alleges that during the new hearing, defendant Keller asked him questions but that the plaintiff was not allowed to question Bretzel and the plaintiff's witnesses were not there. Dkt. No. 7 at ¶44. The plaintiff states that he was not shown the surveillance camera footage. Id.

The plaintiff alleges that on May 10, 2023, he filed "another Appeal of a Contested Hearing DOC Form 91 On DOC 303.29 Disrespect; DOC 303.18 Threats[.]" Id. at ¶45. In his appeal, the plaintiff states that he was denied twenty-four-hour notice of the rehearing and that he "was denied due process in reviewing the video recording of Core North." Id.

The plaintiff states that "[d]ue to this false conduct report [he] was found guilty of another CR that upped [his] D.S. time for 30 days without the false CR [he] wouldn't have gotten any D.S." Id. The plaintiff also states that he was denied "due process to review all evidence of [his] innocence[]" and "there "is no security concern as to reviewing the video as everyone can see it's hanging from H-Unit Building and shows Core North." Id. The plaintiff stated that he "does 'NOT' trust any staff member to tell [him] the truth as to what [he] know[s] the video shows." Id.

The plaintiff alleges that on July 11, 2023, Barber affirmed the conduct report. Id. at ¶46.

The plaintiff alleges that Redgranite staff are biased against incarcerated individuals. Id. at ¶47. He says, "Once Keller and Grenier and staff advocate reviewed the video, they tried to convince me that Bretzel stopped me [and] when that didn't work, they tried to tell me I was turned towards him looking and talking to him, then the three tried to tell me it appeared that I was looking at Bretzel walking backwards talking to him." Id. According to the plaintiff, Bretzel's conduct report clearly states, ". . . . I stopped Inmate Leiser and informed him the inappropriate and disrespectful comments will not be tolerated and he would be receiving conduct report . . . " Id. at ¶48. The plaintiff states that at the May 10, 2023 hearing, the defendants "could not and did not address the fact in ¶47 above The CR states Bretzel stopped me." Id. at ¶49.

The plaintiff alleges that due to the false conduct report, his security classification has been moved from low risk to high risk, which makes him ineligible for minimum custody. Id. at ¶52.

The plaintiff alleges that Bretzel "fabricated this CR [] due to the law suit against Sgt. Nash that [the plaintiff's] brother Loren Leiser v. Labby 20CV123 had filed against her and other correctional staff here at RGCI in retaliation as according to Bretzel this alleged statement was against Sgt. Nash." Id. at ¶43.

The plaintiff claims that because he was prevented from presenting exculpatory evidence during his disciplinary hearing, he asks the court to allow

11

him to proceed against all the defendants and also to order the defendants to provide a copy of the surveillance tape and to do an *in camera* review of the video to assess whether it is exculpatory under <u>Johnson v. Brown</u>, 681 F. App'x 494, 496-97 (7th Cir. 2017); <u>Cobb v. Superintendent</u>, 821 F. Supp. 2d 1071, 1073 (N.D. Ind. 2011). Dkt. No. 7 at p. 14. The plaintiff states that the defendants knew they are not allowed to withhold exculpatory evidence of a surveillance tape based on it being "Unreliable." <u>Id.</u> He states that a surveillance tape "can never be unreliable 'unless it shows the staff member lying' and it is documented evidence of [the plaintiff's] innocence, and defendant purposely withheld it because it showed defendant Bretzel lied in the conduct report making it false charges." <u>Id.</u> at pp. 14-15. The plaintiff also states that Bretzel's defamatory statement "was made with actual malice and to deter third persons from associating with [him]." <u>Id.</u> at p. 15. The plaintiff states that he is a "Pro se Litigator/Writ Writer" and that Bretzel's false statement, the plaintiff's denial of the statement and the defendants' finding him guilty makes him look like he's a liar and not trustworthy to others. <u>Id.</u>

For relief, the plaintiff requests monetary damages for falsifying a legal document; "false accusation that 'he threatened to harm a female Staff member and placing [his] security risk rating at high, which would keep [him] from going to a minimum security prison and longer segregation time." <u>Id.</u>

C.    <u>Analysis</u>

The plaintiff claims that Bretzel violated his constitutional rights by issuing him a false conduct report and that Dodd, Sawall, Barber, Grenier and

12

Case 2:23-cv-00395-PP   Filed 03/12/24   Page 12 of 18   Document 9

Keller violated his constitutional by the manner in which they conducted the disciplinary proceedings related to the conduct report.

An incarcerated individual challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he must show that he has a liberty or property interest that the state has interfered with; and (2) he must show that the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." Lekas v. Briley, 405 F.3d 602, 608 (7th Cir. 2005) (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. Id. Disciplinary segregation can trigger due process protections. Marion v. Columbia Correctional Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an incarcerated person is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly more harsh than those in the normal prison environment, a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98.

13

On the one hand, "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." Id. at 698 (quoting Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted and incarcerated individuals otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. Id. at 697 (citing Wilkinson v. Austin, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an incarcerated person is provided (1) written notice of the charge against the incarcerated individual twenty-four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the incarcerated person. See Wolff v. McDonnell, 418 U.S. 539, 563-69 (1974); Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of Wolff be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994).

The plaintiff alleges that he received fifteen days' disciplinary segregation as the disposition for the conduct report. This disposition does not impact the plaintiff's release date. Wis. Admin. Code §DOC 303.73(9). The plaintiff does not describe the conditions he experienced in segregation and the court cannot conclude that, standing alone, his fifteen-day segregation disposition invoked a liberty interest. See Marion, 559 F.3d at 698. In addition to segregation, the plaintiff states that the conduct report led to him receiving another conduct report for which he received a thirty-day segregation disposition. He also states that the conduct report has led to him being classified as maximum-security, which prevents him from being transferred to a minimum-security institution. These additional factors probably do not invoke a liberty interest. See Sandin v. Conner, 515 U.S. 472, 486 (1995); Meachum v. Fano, 427 U.S. 215, 223-25 (1976). At this early stage, however, the court liberally construes the plaintiff's allegations, and it will presume that he has alleged the deprivation of a liberty interest.

The plaintiff's allegations that he was not allowed to present what he describes as "exculpatory video evidence" at his first disciplinary hearing implicates his right to procedural due process. See Scruggs v. Jordan, 485 F.3d 934, 939-40 (7th Cir. 2007) (citing Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003)). Likewise, the plaintiff's allegations that he received only ten minutes' notice before his second hearing and that he was not allowed to question witnesses at that hearing raise due process concerns. And while the video was included as evidence, the plaintiff did not get to view the video for security

15

reasons, but the plaintiff says there was no security concern with the video. The plaintiff may proceed on a procedural due process claim against the defendants in their individual capacities based on his allegations that he was denied due process at the disciplinary hearings for the conduct report that Bretzel issued him.

Although not entirely clear, it may be that the plaintiff wishes to proceed on a retaliation claim against Bretzel based on his allegations that Bretzel fabricated the conduct report due to the plaintiff's brother's lawsuit. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff has not stated a retaliation claim against Bretzel because the plaintiff has not alleged that Bretzel acted based on any First Amendment protected conduct in which *the plaintiff* engaged.

## II.    Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint (Dkt. No. 7) and this order to the Wisconsin Department of Justice for service on defendants Sgt. John Bretzel, Lt. Butch Dodd, Capt. Terry Sawall, Eric Barber, Joli Grenier and Chad Keller. Under the informal

service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 12th day of March, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**